**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| DAVID TEDESCO, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-248-JPK |
| | ) | |
| STATE FARM FIRE AND CASUALTY | ) | |
| COMPANY, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff David Tedesco filed a complaint against Defendant State Farm Fire and

Casualty Company ("State Farm") in the Superior Court of Lake County, Indiana on May

23, 2021. State Farm removed Plaintiff's complaint to this Court on August 11, 2021. (DE

1). On September 10, 2021, Plaintiff filed a motion for remand. (DE 9). The parties then

filed their consent to the exercise of jurisdiction by United States Magistrate Judge

pursuant to 28 U.S.C. § 636(c), whereupon the case was reassigned to the undersigned

Magistrate Judge. (DE 15). For the reasons that follow, the Court now grants Plaintiff's

motion and remands the case to state court.

## BACKGROUND

The complaint alleges claims arising from an insurance dispute over a loss

sustained by property located in Highland, Indiana and insured under a State Farm

policy. (DE 3). Plaintiff alleges that he reported property damage from hail and

windstorm occurring to his property on about May 25, 2019, and that the parties were

unable to agree on the amount of the loss. Accordingly, the appraisal process in the policy

to resolve such disputes was invoked. (DE 3, ¶¶ 5, 7). The result of the appraisal process was an award of $15,974.08 for the actual cash value of the property and $36,555.23 for the replacement cost value of the property, with 100% of those amounts attributed to the covered loss. (*Id.* ¶¶ 13, 14; *see also* DE 3 at 9 (Ex. 1, Appraisal Award[1])). Plaintiff alleges that he intends to replace the damaged property. (DE 3, ¶ 15). Plaintiff also alleges that State Farm refused to pay the full amount of the appraisal award, and cites Exhibit 2 in support. (*Id.* ¶ 19). Exhibit 2 indicates that State Farm made payments to Plaintiff totaling $4,392.42. (DE 3 at 15 (Summary of Loss). Based on these facts, the Complaint includes seven counts:

- Count I alleges a breach of contract claim based on State Farm's refusal to pay the replacement cost of $36,55.23, and/or the actual cash value of $15,974.08 (DE 3 ¶¶ 26, 27). Plaintiff seeks to recover "an amount which will fully, fairly, and adequately compensate him for all damages recoverable under Indiana law, for breach of contract, including compensatory damages, and consequential damages, for the costs of this action, for prejudgment interest, and for all other just and proper relief in the premises." (*Id.*, Wherefore clause following ¶ 28).

- Count II alleges a claim for bad faith settlement practices based on State Farm's wrongful denial of the

---

[1] "Federal Rule of Civil Procedure 10(c) provides that 'written instruments' attached to a pleading become part of that pleading for all purposes. Thus, when a plaintiff attaches to the complaint a document that qualifies as a written instrument, and [his] complaint references and relies upon that document in asserting [his] claim, the contents of that document become part of the complaint and may be considered as such" by the court. *Williamson v. Curran*, 714 F.3d 432, 435–36 (7th Cir. 2013). Here, the exhibits to the complaint include Exhibit 1, Appraisal Award (DE 3 at 9); Exhibit 2, State Farm Coverage Letter (*id.* at 10-15); Exhibit 3, Appraisal Service Invoice (*id.* at 16); Exhibit 4, Plaintiff's Sworn Proof of Loss (*id.* at 17); and Exhibit 5, Homeowner's Policy, Renewal Declarations (*id.* at 18-19).

appraisal award. (DE 3 ¶ 32). Plaintiff alleges that State Farm wrongfully adjusted the replacement cost amount from the $36,555.23 found by the appraiser to $7,105.07 (*id.* ¶ 36), by "maliciously ignor[ing] approximately eighty percent of the covered damage for the purpose of short changing the policyholder" (*id.* ¶ 37). Plaintiff also alleges "unfounded delays in handling the claims and paying policy proceeds." (*id.* ¶ 38). Plaintiff seeks to recover "an amount which will fully, fairly, and adequately compensate him for all damages recoverable under Indiana law, for State Farm's breach of its duty of good faith and fair dealing, for costs of this action, for punitive damages, and for all other relief that is just and proper in the premises." (*Id.*, Wherefore clause following ¶ 39).

- Count III alleges a claim for attorney's fees under Indiana Code 34-52-1-1(b). Plaintiff alleges that State Farm's conduct concerning the appraisal process and handling of the claim, as well as its continuing litigation of its nonpayment, was and is "frivolous, unreasonable, or groundless." (DE 3 ¶¶ 42, 43). As a result, Plaintiff seeks to recover "attorney fees and costs, and for all other just and proper relief under Indiana law." (*Id.*, Wherefore clause following ¶ 44).

- Count IV alleges a claim for "abuse of process" based on State Farm's issuance of an insurance policy that contains an appraisal process and then avoidance of paying the appraisal award. (DE 3 ¶¶ 46-49, 51-53). Plaintiff alleges that he sustained damages as a result of State Farm's abuse of process, including appraisal fees, attorney's fees, costs, and expenses (*id.* ¶ 54), and that the appraisal fees amounted to $6,250 (*id.* ¶ 55). As a result, Plaintiff seeks to recover "an amount which fully, fairly, and adequately compensates him for all damages recoverable under Indiana law for State Farm's abuse of process, for costs of this action, for punitive damages, and for all other relief that is just and proper in the premises." (*Id.*, Wherefore clause following ¶ 55).

- Count V alleges a claim for "Waiver." Plaintiff alleges that State Farm, by its bad faith conduct, has waived the time limitation in the insurance policy for when the repairs must be initiated in order to recover replacement cost value. (DE 3 ¶ 57). Plaintiff also alleges that, by its bad faith, "State Farm

3

has waived any policy condition requiring actual replacement before it owes replacement cost." (*Id.* ¶ 58). As a result, Plaintiff asks the court to "find that State Farm waived the time period required for replacement cost and to award the cost of replacement without requiring actual replacement, and for all other just and proper relief." (*Id.*, Wherefore clause following ¶ 58).

- Counts VI and VII seek declaratory relief. Count VI seeks a declaration "that the replacement value for this loss is $36,55.23" (*id.*, Wherefore clause following ¶ 61), and Count VII seeks a declaration "that the actual cash value for this loss is $15,974.08" (*id.*, Wherefore clause following ¶ 3 at page 8).

## LEGAL STANDARD

### A.   SUBSTANTIVE REQUIREMENTS FOR REMOVAL

Removal of cases from state court to federal court is governed by 28 U.S.C. § 1441, which provides, in pertinent part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). In other words, a defendant may remove a case to federal court only if the federal district court would have original subject matter jurisdiction over the action. *See Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997). The removing defendant bears the burden of demonstrating that removal is proper, including, in cases based on federal court diversity jurisdiction, the burden of demonstrating that the requirement of more than $75,000 in controversy is satisfied. *Id.*

In establishing that the amount in controversy satisfies the jurisdictional minimum, a removing defendant may rely on "the sum demanded in good faith in the

initial pleading," which is "deemed to be the amount in controversy." 28 U.S.C.
§ 1446(c)(2). Such a demand is known as an *"ad damnum"* clause. *Judon v. Travelers Prop.
Cas. Co. of Am.*, 773 F.3d 495, 501 n.3 (3d Cir. 2014) ("[A]n *'ad damnum'* clause is a 'clause
in a prayer for relief stating the amount of damages claimed.'" (quoting *Black's Law
Dictionary* 40 (8th ed. 2004)); *see, e.g., Grauvogl v. Roby*, No. 2:11-CV-333, 2012 WL 243573,
at *3 (N.D. Ind. Jan. 25, 2012) ("Where a defendant seeks to remove a state court case
initiated by a complaint that includes an accurate and reliable ad damnum clause, the
stated ad damnum is generally controlling for purposes of determining the amount in
controversy." (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288 (1938),
and *Rising–Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815 (7th Cir. 2006)).

Many states, however, prohibit the plaintiff from praying for a specific amount of
damages in the complaint. That is the case here. *See* Ind. R. Tr. P. 8(A)(2) ("[I]n any
complaint seeking damages for personal injury or death, *or seeking punitive damages*, no
dollar amount or figure shall be included in the demand.") (emphasis added). "[T]he
notice of removal may assert the amount in controversy if the initial pleading seeks … a
money judgment, but the State practice … does not permit demand for a specific sum."
28 U.S.C. § 1446(c)(2)(A)(ii). In those circumstances, "removal of the action is proper on
the basis of an amount in controversy asserted [in the notice of removal] . . . if the district
court finds, by the preponderance of the evidence, that the amount in controversy
exceeds the amount specified in section 1332(a)." *Id.* § 1446(c)(2)(B). A defendant can meet
its burden of demonstrating the amount in controversy through contentious
interrogatories or admissions in state court; by calculations from the complaint's

allegations; by reference to the plaintiff's informal estimates or settlement demands; or by introducing evidence, in the form of affidavits. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006). This estimation is based on the facts as they existed at the time of removal. *See St. Paul Mercury Indem. Co.*, 303 U.S. at 292-93. The proponent of federal jurisdiction need only demonstrate "a plausible and good faith estimate of an amount in controversy" that exceeds $75,000; the defendant's plausible and good faith estimate will be defeated only "if it is a 'legal certainty' that the plaintiff's claim is for less than the requisite amount." *Webb v. Fin. Regulatory Auth., Inc.*, 889 F.3d 853, 859 (7th Cir. 2018).

### B.   PROCEDURAL REQUIREMENTS FOR REMOVAL

The substantive jurisdictional requirements for removal are not the only hurdles that a removing defendant must clear to avoid a remand back to state court. There are also procedural requirements regarding the timeliness of removal. Specifically, § 1446(b) "includes two different 30-day time limits for removal." *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 823 (7th Cir. 2013).[2] Ordinarily, a notice of removal must be filed in federal court within 30 days after the defendant receives service of the state court complaint. *See* 28 U.S.C. § 1446(b)(1). But "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service

---

[2] In addition to the two 30-day time limits, diversity cases must be removed within "1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). State Farm filed the notice of removal within one year of Plaintiff filing the state court complaint, so the one-year time limit is not at issue here.

or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.,* § 1446(b)(3). "While the time limitation[s] imposed by § 1446(b) [are] not jurisdictional, [they are] a strictly applied rule of procedure and untimeliness is a ground for remand so long as the timeliness defect has not been waived." *N. Ill. Gas Co. v. Airco Indus. Gases, A Div. of Airco, Inc.,* 676 F.2d 270, 273 (7th Cir. 1982).[3]

## DISCUSSION

### A.   DIVERSITY JURISDICTION

State Farm's notice of removal asserts federal jurisdiction under 28 U.S.C. § 1332(a), which grants federal district courts original jurisdiction if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Federal jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) exists only when there is complete diversity between the plaintiffs and the defendants and the amount in controversy requirement is met. *See Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 377 (1978); *Chase,* 110 F.3d at 427. State Farm's notice of removal states facts to show that Plaintiff is a citizen of Indiana and State Farm is a citizen of Illinois, and that the amount in controversy exceeds $75,000. (DE 1 ¶¶ 4-11). Plaintiff does not dispute these facts, and the Court finds that it has diversity

---

[3] A timeliness defect in removal is waived unless remand is sought within 30 days after the notice of removal is filed. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).").

jurisdiction over this suit. Nevertheless, Plaintiff raised a prompt objection to the timeliness of removal (*see* note 3, *supra*), and the sole issue for the Court to decide is whether State Farm complied with the procedural requirements of § 1446(b) by removing the case within 30 days of receiving notice, either through Plaintiff's complaint or through other paper, that the case is removable in diversity.

### B.    THE PARTIES' CONTENTIONS

The removal statute seeks to promote two competing goals: encourage prompt, proper removals and prevent hasty, improper removals. *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 609–10 (5th Cir. 2018). The parties' arguments in this case exemplify the tension between these two goals, with Plaintiff's arguments invoking the policy of encouraging prompt removal and State Farm's arguments invoking the policy of preventing hasty and premature removals.

Plaintiff states that he served State Farm with the complaint on May 28, 2021, and he attaches a copy of a United States Postal return receipt to prove the service. (DE 10 at 1; DE 9-1). Relying on the 30-day time limit in § 1446(b)(1), Plaintiff argues that State Farm's removal approximately 75 days later on August 11, 2021 was untimely because State Farm could discern from the face of the complaint that the case was removable. That this is so, Plaintiff argues, is shown by the fact that State Farm's notice of removal cites to the complaint's allegations to demonstrate that the amount in controversy requirement is satisfied. Specifically, the notice of removal states:

> Here, Plaintiff alleges he intends to replace his property, and that the replacement cost is $36,555.23. (Compl. at ¶¶ 15, 26). In addition, Plaintiff brings a claim for "bad faith," alleging

that State Farm breached its obligation of good faith in handling Plaintiff's claim. (Compl. at ¶¶ 29–39). Plaintiff claims punitive (treble) damages as a result of this alleged breach. (Compl. pp.5).

(DE 1 ¶ 13).

While State Farm concedes that its notice of removal relies on the allegations of the complaint to establish the amount in controversy, it argues that it was not able to ascertain that the case was removable until either July 16, 2021 or July 20, 2021.[4] Specifically, State Farm represents that, on June 16, 2021, it served Plaintiff with a request to admit that the amount in controversy in this matter is greater than $75,000. Plaintiff did not respond to the request to admit, which was then "deemed admitted by operation of law as of July 16, 2021, pursuant to [Indiana] Trial Rule 36." (DE 1 ¶ 14; DE 1-2). In the alternative, State Farm represents that it served Plaintiff's counsel with correspondence on July 20, 2021 requesting "that Plaintiff stipulate that he would not demand and/or accept any recovery in this matter in excess of $75,000.00." (DE 1 ¶ 15; DE 1-3). Plaintiff's counsel responded by email the same date as follows:

> Discovery is ongoing. The federal rules allow you a year to investigate the amount in controversy. There is nothing requiring an affirmative stipulation on our part. Any assumption you make by our silence as to a stipulation to an excess amount of $75,000 or not exceeding 75,000 would be wrong. We are simply just not going to respond.

---

[4] State Farm does not explicitly state which of these two dates is the date when it was first able to ascertain that the case could be removed. But if either one is the applicable date, then State Farm's removal on August 11, 2021 would be timely.

(DE 1 ¶ 16; DE 1-4). According to State Farm, when Plaintiff's counsel refused to stipulate that the damages Plaintiff was seeking were less than $75,000, State Farm was entitled to infer that Plaintiff sought more than $75,000 and thus the case became removable at that point. (DE 1 ¶¶ 18, 21).

Plaintiff responds to State Farm's arguments by pointing out that his counsel served an objection to State Farm's request to admit on July 6, 2021. (DE 10 at 3). Plaintiff argues that, assuming the complaint itself did not trigger the 30-day time clock, then it was triggered at the latest by July 6, 2021, when Plaintiff's counsel objected to the request to admit. (*Id.* at 3-4). Thus, according to Plaintiff, even under State Farm's theory that the 30-day clock was triggered by a paper other than the complaint, State Farm's removal was untimely because it occurred more than 30 days after July 6, 2021. Plaintiff argues that his counsel's July 20, 2021 email response to State Farm's request for a stipulation does not alter the July 6, 2021 triggering date, because his counsel did not provide any additional information that State Farm did not already know from the objection to State Farm's request to admit. (*Id.*). In fact, Plaintiff contends, the email response expressly stated that State Farm should not infer anything about the amount in controversy from counsel's refusal to stipulate, as his refusal merely reflected his belief that no rule required him to respond to State Farm's stipulation request. (*Id.* at 4).

C.   ANALYSIS

1.   ASCERTAINABILITY BASED ON CALCULATIONS FROM
the COMPLAINT'S ALLEGATIONS

The precise question before this Court is whether "the case stated by the initial pleading [was] . . . removable," and, if it was not, whether State Farm removed this case "within thirty days after receipt . . . through service or otherwise, of a copy of an … other paper from which it [could] first be ascertained that the case [was] one which is or has become removable." 28 U.S.C. § 1446(b)(3). According to Plaintiff, the amount in controversy was ascertainable from the complaint, and therefore the 30-day removal period was triggered by that complaint. Courts have held that the amount in controversy may be ascertainable from the complaint where the categories of damages the plaintiff seeks to recover are apparent from the complaint, and those categories only need to be translated into monetary sums, which sums are also apparent from the complaint. *See Judon*, 773 F.3d at 501 (discussing where damages are stated in complaint in terms of categories, and those "categories of damages, a legal question, only need[ ] to be translated into monetary sums"). Courts also consider whether state law allows recovery of each category of damages the plaintiff seeks; if state law forecloses recovery of a certain type of damages, then the court will not consider it in its determination of whether the amount in controversy requirement is satisfied. *See Webb*, 889 F.3d at 859 n.4.

State Farm has been a defendant in cases from this district where it established the jurisdictional amount in controversy and thus a basis for removal using this approach. Thus, in *O'Boy v. State Farm Mutual Automobile Insurance Co.,* No. 2:04-cv-441-PS, 2006 WL

11

1660750, at *4 (N.D. Ind. June 13, 2006), the court ruled in favor of State Farm by upholding federal jurisdiction even though the complaint did not contain an ad damnum clause specifying the amount of damages. The court explained that the plaintiff made "several allegations elsewhere in the complaint regarding the amount in controversy," which, when "[f]airly read," demonstrated that the plaintiff "demand[ed] more than $75,000 in damages." *Id.*

*Nelson v. State Farm Insurance Co.*, No. 2:10-cv-295, 2010 WL 11579104 (N.D. Ind. Dec. 10, 2010), is similar. It involved a suit seeking damages for State Farm's refusal to provide coverage under a property insurance policy. *Id.* at *1. The court found that State Farm had shown that the amount in controversy exceeded the jurisdictional minimum from "the claims presented on the face of the complaint in the aggregate," where the complaint sought real property damage in excess of $20,000, mental and personal pain and suffering in the amount of $50,000, and punitive damages for tortious breach of duty to deal in good faith in the amount of $1,000,000. *Id.* at *3. Significantly, the *Nelson* court sua sponte noted that, based on the filings presented in the notice of removal, it was likely that State Farm had not complied with the 30-day time limit for removal. *Id.* at *4 n.5. The state court complaint had been filed on May 19, 2010 but State Farm had not removed until July 19, 2010. *Id.* at 1. The court rejected State Farm's reliance on the second 30-day time limit in § 1446, observing that State Farm "fails to state why removal was not ascertainable from the initial complaint." *Id.* at *4 n.5. But because the plaintiff had not raised the timeliness objection, the court held it was waived. *Id.*

12

Similar to *O'Boy* and *Nelson*, the allegations in Plaintiff's complaint show that the amount in controversy in this case exceeds $75,000. As previously discussed, the complaint expressly states that Plaintiff seeks the full replacement cost amount awarded by the appraiser. The complaint alleges that amount is $36,555.23.[5] Plaintiff attaches the appraisal award to his complaint to prove the $36,555.23 amount. (DE 3 at 9). The complaint does not make clear whether Plaintiff seeks the full $36,555.23 amount without offsets for the deductible under the policy or for any payments on the loss already made by State Farm. But even if it is assumed that those offsets are required by the insurance policy and/or under the law, the exhibits to the complaint show that the amounts would be $2,896 for the deductible offset and $4,392.42 for the prior payments offset. (DE 3 at 11, 15). Thus, a simple mathematical calculation shows that the complaint puts into controversy at least $29,266.81 in replacement costs.[6]

---

[5] The complaint also seeks to recover actual cash value damages. The insurance policy provides for the payment of loss covered by the policy based on actual cash value, until repairs to the damaged property are actually undertaken, at which time the policyholder may recover an additional amount under the Replacement Cost Benefits provision in the policy. *See* (DE 3 at 11). It appears that the appraisal award amount for replacement cost value might represent an alternative to the actual cash value award, rather than additional recovery amount. While "[a] plaintiff is allowed to aggregate two or more of his claims against a defendant in order to satisfy the jurisdictional amount requirement, … where two or more claims are alternative theories of recovery for the same harm, they may not be aggregated." *Gallo v. Homelite Consumer Prods.*, 371 F. Supp. 2d 943, 947 (N.D. Ill. 2005) (citing cases). The Court thus considers only the higher amount of replacement cost damages in determining the amount in controversy.

[6] $36,555.23 – ($2,896 + $4,392.42) = $29,266.81.

In addition to replacement costs, the complaint seeks to recover punitive damages. "[P]unitive damages can be included in the calculation of the amount in controversy when the substantive law for the plaintiff's claim permits them to be awarded." *Plunkett v. Ill. Farmers Ins. Co.*, No. 2:18-cv-52-DLP-WTL, 2018 WL 3017154, at *3 (S.D. Ind. June 15, 2018) (citing *Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 240 (1943), and *Clark v. State Farm Mut. Auto. Ins. Co.*, 473 F.3d 708, 711-12 (7th Cir. 2007)). Plaintiff alleges that State Farm breached its duty of good faith and fair dealing (DE 3 ¶¶ 29-39). "Indiana law recognizes a cause of action against an insurer for breaching its duty to exercise good faith in evaluating claims, and it permits recovery of punitive damages." *Clark*, 473 F.3d at 712 (citing *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518–20 (Ind. 1993) (stating that "the recognition of an independent tort for the breach of the insurer's obligation to exercise good faith provides the tort upon which punitive damages may be based"))). Therefore, it is appropriate to consider Plaintiff's claim for punitive damages in determining whether the complaint revealed the amount in controversy. *See, e.g.,* *Plunkett*, 2018 WL 3017154, at *3; *Nelson*, 2010 WL 11579104, at *3; *Paddack v. Life Ins. Co. of N. Am.*, No. 4:09-cv-25-TS, 2009 WL 2611932, at *3 (N.D. Ind. Aug. 24, 2009). Moreover, the amount put into controversy by Plaintiff's punitive damages claim is easily discernable from the complaint because Indiana law limits punitive damages to the greater of three times the amount of compensatory damages or $50,000. *See* Ind. Code 34-51-3-4. Accordingly, Plaintiff's claim for punitive damages puts into issue at least treble

the amount Plaintiff seeks for replacement costs, or an additional $87,800.43 (i.e. $29,266.81 x 3).[7]

In short, the complaint shows that Plaintiff seeks at least $29,266.81 in replacement cost damages plus an additional $87,800.43 in punitive damages, or a total of $117,067.24, which exceeds the $75,000 jurisdictional threshold. The Court could also consider other categories of damages sought in the complaint--e.g., out-of-pocket economic harm, such as the appraisal costs, which the complaint alleges is $6,250; other tort-like damages such as emotional distress;[8] and attorney's fees under Ind. Code 34-52-1-1[9]. But those other

---

[7] The full amount of punitive damages to which Plaintiff might be entitled is in controversy, even though Plaintiff may not be awarded that full amount, because "the Court is charged with determining the 'amount in controversy,' not the amount the Plaintiff will actually collect." *Paddack*, 2009 WL 2611932, at *3 n.2; *see Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) ("the removing party's burden . . . concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks").

[8] *See Johnson v. Fortis Ins. Co.*, No. 2:05-CV-20 PPS PRC, 2006 WL 1707242, at *5 (N.D. Ind. June 15, 2006) ("[I]f Plaintiffs were to prevail on their bad-faith claim, they would be able to recover the panoply of tort damages associated with the denial of their claim and not just the damages stemming from the unpaid medical bills." (citing *Erie Ins. Co.*, 622 N.E.2d at 519 (in bad-faith tort claims, "all damages directly traceable to the wrong and arising without an intervening agency are recoverable")), and *Patel v. United Fire & Cas. Co.*, 80 F. Supp. 2d 948, 958 (N.D. Ind. 2000) (the Indiana Supreme Court, if presented with the issue, "would hold that an insured injured by the bad faith conduct of an insurer ... is entitled to recover damages based upon traditional tort principles of compensation for resultant injuries actually suffered, including emotional distress"))).

[9] "Generally, the amount in controversy does not include legal fees because they are costs," but legal fees "may count toward the amount in controversy if the plaintiff has a right to them based on contract, statute, or other legal authority." *Plunkett*, 2018 WL 3017154, at *3 (internal quotation marks and citations omitted); *see also Oshana v. Coca–Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006). "The Northern District of Indiana has held 'an insurer's denial of coverage in bad faith may lead to a conclusion that the insurer litigated the action in bad faith,' and therefore, entitles the plaintiff to attorney's fees under Ind.

categories need not be considered here because, even without them, the complaint shows that Plaintiff is seeking in excess of $75,000.

### 2.   GOOD FAITH ESTIMATE VS. DEFINITIVELY ESTABLISH

Despite the above, State Farm argues that the case was not removable based on the allegations of the state court complaint because those allegations only "*suggest*[ ] Plaintiff is likely seeking damages in excess of $75,000." (DE 12 ¶ 6 (emphasis added)). State Farm asserts that it sought "to *definitively establish*" that was the case by serving a request for admission, and, when Plaintiff refused to answer the request, by seeking a stipulation. (*Id.* ¶ 7 (emphasis added)). But it was not necessary for State Farm to "definitively establish" that the amount in controversy exceeds the jurisdictional minimum before removing the case to federal court. "[A] good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." *Oshana,* 472 F.3d at 511; *see, e.g., Murphy v. Air & Liquid Sys., Inc.*, No. 21-cv-519-DWD, 2021 WL 4169986, at *3 (S.D. Ill. Aug. 3, 2021) ("Unfortunately for Westinghouse, the removal statute only requires a defendant to have a reasonable certainty[10] of federal jurisdiction, not an

---

Code § 34-52-1-1(b)(3)." *Plunkett*, 2018 WL 3017154, at *3 (quoting *Patel,* 80 F. Supp. 2d at 958).

[10] The applicable standard is preponderance of the evidence. *See Carroll v. Stryker Corp.*, 658 F.3d 675, 681 n.1 (7th Cir. 2011) (noting that the Seventh Circuit has "retracted language in previous opinions, beginning with *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993), suggesting that the proponent of jurisdiction must 'prove' to a 'reasonable probability' that jurisdiction exists," citing *Meridian Sec. Ins. Co.*, 441 F.3d at 539–40, which held that the applicable standard is preponderance of the evidence, not "reasonable probability").

absolute certainty." (internal quotation marks and citation omitted)). "Once [the removing defendant] has made this showing, jurisdiction will be defeated only if it appears to a legal certainty that the stakes of the lawsuit do not exceed $75,000." *Carroll*, 658 F.3d at 680; *see also Judon*, 773 F.3d at 501 ("[U]nder the legal certainty test, the *challenger* to subject matter jurisdiction [must] prove, to a legal certainty, that the amount in controversy *could not exceed* the statutory threshold." (internal quotation marks and citations omitted) (emphasis in original)).

As the discussion in the preceding section demonstrates, the complaint does more than merely "suggest" that the damages Plaintiff is seeking exceed $75,000; it includes allegations from which State Farm plausibly could, and in fact did, assert a "a good-faith estimate" of the amount in controversy. As Plaintiff points out, State Farm relies in its notice of removal on the complaint's allegations to establish that the amount in controversy requirement for federal court jurisdiction has been met and thus removal to federal court proper. As Plaintiff also points out, the later "other papers" cited by State Farm do not provide any additional information about the amount in controversy beyond what State Farm already knew from the complaint's allegations. In other words, "[n]o basis for removal advanced by [State Farm] appeared in [any later received other paper] that did not appear first in [Plaintiff's] complaint—indeed, that [State Farm] did not [itself] point to in arguing [in the notice of removal that removal was proper]." *Jackson Cnty. Bank v. Dusablon*, No. 1:18-cv-1346, 2018 WL 7204225, at *5–6 (S.D. Ind. June 7, 2018). State Farm's "decision to wait until after Plaintiff confirmed" what was apparent from

the face of the complaint "does not excuse [State Farm's] delay in removing this action."

*Murphy*, 2021 WL 4169986 at *4.[11]

### 3. FACTS SUFFICIENT TO *ALLOW* REMOVAL VS. FACTS SUFFICIENT TO *REQUIRE* REMOVAL

State Farm argues to the contrary based on *Cunningham v. Manpower Professional Services Inc.*, No. 07-cv-656-JPG, 2008 WL 754004 (S.D. Ill. Mar. 18, 2008), and *Kadambi v. Express Scripts, Inc.*, No. 1:13-cv-321-JD-RBC, 2014 WL 2589673 (N.D. Ind. June 10, 2014). *See* (DE 12 at 3-4). Both cases (as well as the cases on which those cases rely) involve the substantive question of whether the amount in controversy requirement had been met for jurisdictional purposes rather than the procedural question of timing.[12] For purposes of the substantive question of whether the defendant has adequately established the existence of the jurisdictional amount in controversy, it is well established that a defendant may rely on a plaintiff's response to an interrogatory, request for admission,

---

[11] *See, e.g., Addison v. CBS Corp.*, Civil No. 13-397-GPM, 2013 WL 6169155, at *3 (S.D. Ill. Nov. 25, 2013) (the 30-day removal period is triggered when removal becomes "ascertainable," not when it becomes "uncontestable"); *Fields v. Jay Henges Enters., Inc.*, Civil No. 06-323-GPM, 2006 WL 1875457, at *7 (S.D. Ill. June 30, 2006) (defendants should not "be able to toll the removal clock indefinitely through reliance on the discovery process to establish jurisdictional prerequisites with absolute certainty"); *McCoy v. Gen. Motors Corp.*, 226 F. Supp. 2d 939, 941 (N.D. Ill. 2002) (defendants cannot "wait for discovery responses that simply confirm what was obvious from the face of the complaint" (citing *Century Assets Corp. v. Solow*, 88 F. Supp. 2d 659, 662 (E.D. Tex. 2000) (rejecting on policy grounds defendant's argument that cases are not removable until there has been an absolute affirmation via discovery request that more than $75,000 was in issue))).

[12] *See Walker*, 727 F.3d at 824 (explaining that "the timeliness question" and "the factual inquiry into whether the case is substantively appropriate for removal" involve "separate determination[s]," which parties should not "conflate[ ]").

or request to stipulate.[13] The courts in *Cunningham* and *Kadambi* relied on this principle in holding the defendants' removal was proper notwithstanding the plaintiffs' assertion that less than $75,000 was in controversy.[14] An argument based on these cases, however, erroneously "equates facts sufficient to *allow* removal with facts sufficient to *require* removal within thirty days." *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1094 (9th Cir. 2021)

---

[13] *See, e.g., Johnson,* 2006 WL 1707242, at *3 (finding that the defendant had shown by a preponderance of the evidence that the amount in controversy exceeded $75,000 where the plaintiffs denied a request to admit that their total claimed damages did not equal or exceed $75,000, stating that "[t]he only logical conclusion from Plaintiffs' denial is that Plaintiffs believed that their total claim in damages equaled *and* exceeded $75,000" (emphasis in original)).

[14] In *Cunningham*, the defendants announced their intention to remove the case if the plaintiff did not stipulate that she would limit her request for damages to less than the jurisdictional minimum. 2008 WL 754004, at *1. The plaintiff did not respond, and the defendants removed the case. *Id.* The plaintiff then moved to remand, attaching an affidavit in support in which she stated that "the total of any damages sought in this claim does not exceed $75,000. *Id.* Citing the Seventh Circuit's statement in *In re Shell Oil Co.,* 970 F.2d 355, 356 (7th Cir. 1992) (*per curiam*), that "[l]itigants who want to prevent removal must file a binding stipulation or affidavit with their complaints," the court held that the plaintiff's "post-removal affidavit comes too late to shed light on the amount in controversy at the time of removal," and further was insufficient because it did "not bind [the plaintiff] to a recovery of less than $75,000." *Cunningham,* 2008 WL 754004, at *2, 3.

In *Kadambi*, the defendants issued interrogatories requesting, among other things, that the plaintiff identify all damages, costs, and expenses. 2014 WL 2589673, at *2. After the plaintiff filed an amended complaint adding claims and defendants, the defendants sent a letter to the plaintiffs requesting that they each execute an affidavit agreeing they were not seeking a judgment in excess of $75,000 and stating that, if any plaintiff was unwilling to execute the affidavit, then the defendants would presume they were seeking damages in excess of the jurisdictional amount necessary for removal. *Id.* at *3. The court held that the plaintiffs' argument in favor of their remand motion that they were not seeking damages in excess of $75,000 was unpersuasive, stating that "where a plaintiff does not stipulate to damages below the jurisdictional amount after being requested to do so, 'the inference arises that he thinks his claim may be worth more.'" *Kadambi*, 2014 WL 2589673, at *7 (quoting *Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000)).

(emphasis in original). That is, the only question decided was whether the defendants had met their burden of showing the jurisdictional minimum was met by, among other things, the plaintiffs' refusal to stipulate. Neither case "answer[s] *how* [the court] determine[s]," *id.* (emphasis in original), whether the amount in controversy is ascertainable from the complaint. Indeed, that issue was not before either court. In *Cunningham*, the plaintiff's complaint contained only an open-ended prayer for relief that was insufficient to allow removal. 2008 WL 754004, at *2. And in *Kadambi*, the plaintiff's initial complaint sought only $6,000 in damages for defamation and breach of a settlement agreement, and the later filed amended complaint did not set forth any amount in controversy. 2014 WL 2589673, at *2.

State Farm also quotes the Seventh Circuit's statement in *Oshana* that a plaintiff "cannot benefit by playing a cat-and-mouse game, purporting to disclaim damages in excess of $75,000 but refusing to admit or stipulate that her damages will exceed that amount." 472 F.3d at 512; *see* (DE 12 at 3). But the plaintiff's complaint in *Oshana* affirmatively disclaimed damages in excess of the federal jurisdictional amount. 472 F.3d at 509. At the same time, it also sought unspecified compensatory damages, disgorgement of the defendant's profits, attorney's fees, and costs. *Id.* Because a claim for disgorgement of profits would easily put into controversy an amount in excess of the jurisdictional minimum, the defendant sought to clarify the disclaimer in the plaintiff's complaint by asking the plaintiff to formally admit that she would not seek disgorgement of profits. *Id.* at 509-10. The court noted that disclaimers such as the one appearing in the plaintiff's complaint "have been long approved as a way of staying out of federal court," *id.* at 511

20

(citing *St. Paul Mercury,* 303 U.S. at 294), but stated this was only when the disclaimer is binding, which, under Illinois law, the disclaimer at issue was not, *id.* Accordingly, in a situation where there would *not* be federal jurisdiction based on the face of the complaint if the plaintiff's disclaimer were binding, the court held that, if the plaintiff really wanted to stay out of federal court, he should have agreed to a binding stipulation as the defendant requested him to do. *Id.* at 512. In other words, *Oshana*, like *Cunningham* and *Kadambi*, involved an ambiguous statement of damages that did not put the defendant on notice that more than $75,000 might be in controversy until the plaintiff declined to stipulate to a lesser amount.

In short, the line of cases on which State Farm relies stand only for the proposition that, where the complaint is ambiguous or unclear, the plaintiff cannot avoid removal by refusing to admit or stipulate to the amount of his damages. Plaintiff may very well have been engaged in "gamesmanship," as State Farm suggests, when his counsel objected to State Farm's request to admit and refused to stipulate to an amount in controversy. Any such gamesmanship is not to be condoned.  Nevertheless, the fact remains that State Farm already knew from the allegations in the complaint that a good faith estimate of the amount in controversy exceeded $75,000, so State Farm had no need for a discovery response or a stipulation to be able to ascertain that the predicates to federal jurisdiction existed.

4. Bright-Line Rule vs. Burying One's Head In The
        Sand

In support of the timeliness of its removal, State Farm's notice of removal (but not

its response in opposition to Plaintiff's remand motion) cites the Seventh Circuit's

opinion in *Walker v. Trailer Transit, Inc.*, in which the Seventh Circuit "clarif[ied] the

standard for determining when the 30-day time limit under § 1446(b)(3) is triggered — an

issue that has divided district courts in this circuit." 727 F.3d at 823. Although *Walker*

dealt specifically with § 1146(b)(3), its analysis applies equally to determining when the

30-day clock under § 1446(b)(1) is triggered. *See Redfield v. Uthe,* No. 2:20-cv-199-TLS-JPK,

2021 WL 2451906, at *3 (N.D. Ind. June 15, 2021).

Reviewing case law from outside the Seventh Circuit, the *Walker* court found that

"[e]very circuit that has addressed the question of removal timing has applied § 1446(b)

literally and adopted some form of a bright-line rule that limits the court's inquiry to the

clock-triggering pleading or other paper and, with respect to the jurisdictional amount in

particular, requires a specific, unequivocal statement from the plaintiff regarding the

damages sought." 727 F.3d at 824 (citing cases from the Second, Fourth, Fifth, Eighth,

Ninth, and Tenth Circuit Courts of Appeal). The *Walker* court held that it would "follow

the lead of [its] sister circuits and now adopt the same approach." *Id.* Under the "bright-

line" rule adopted in *Walker*:

> The 30–day removal clock does not begin to run until the
> defendant receives a pleading or other paper that
> affirmatively and unambiguously reveals that the predicates
> for removal are present. With respect to the amount in
> controversy in particular, the pleading or other paper must
> specifically disclose the amount of monetary damages sought.

22

> This bright-line rule promotes clarity and ease of administration for the courts, discourages evasive or ambiguous statements by plaintiffs in their pleadings and other litigation papers, and reduces guesswork and wasteful protective removals by defendants.

*Id.*

State Farm apparently takes the statement in *Walker* that the pleading "must specifically disclose the amount of monetary damages sought" to mean that, for a case to be removed based on diversity jurisdiction, the complaint must contain an ad damnum clause. Arguably, the *Walker* court might have suggested that was the case in a footnote where the court acknowledged that "all three states in our circuit restrict the plaintiff's ability to quantify the amount of damages sought in the complaint," while also observing that "[j]urisdictional requests for admission are a common device for determining whether the amount-in-controversy minimums are met." *Id.* at 824 n.4. But the court merely referenced the ad damnum clause issue; it did not definitively resolve all questions regarding the removability of complaints without ad damnum clauses. In fact, earlier Seventh Circuit case law already had established that discovery was only one of several ways for a removing defendant to establish the amount in controversy where the complaint does not contain an ad damnum clause.

For example, in *Meridian Security Insurance Co. v. Sadowski,* the court noted that some states, "of which Indiana is an example (discussed in *Rising–Moore*[, 435 F.3d 813]), forbid all mention of how much money the plaintiff hopes to recover," explaining that, while "[t]hese rules get rid of headline-grabbing but unrealistic demands[,] . . . [u]nfortunately, they also complicate the question whether a suit may be removed." 441

23

F.3d at 541. Like the *Walker* court, the *Meridian Security* court "suggested . . . contentions interrogatories or admissions in state court" as one way to address the problem. *Id.* But notably, the *Meridian Security* court also said that the removing defendant might establish the amount in controversy in other ways as well, such as "by reference to the plaintiff's informal estimates or settlement demands (as in *Rising–Moore*); or by  introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands (*see Rubel v. Pfizer Inc.*, 361 F.3d 1016 (7th Cir. 2004))," or, most significantly for this case, "*by calculation from the complaint's allegations* (as in *Brill*[, 427 F.3d 466])." *Meridian Sec. Ins. Co,* 441 F.3d at 541-42 (emphasis added). The court explained further that "[t]he list *is not exclusive*; any given proponent of federal jurisdiction may find a better way to establish what the controversy between the parties amounts to." *Id.* at 542 (emphasis added).[15]

Walker* does not speak to the issue here of whether State Farm could have met its burden of showing the amount in controversy with calculations from the complaint's allegations. *See Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 74-75 (1st Cir. 2014) (noting that, while the Seventh Circuit in *Walker* "highlighted that [the] [bright-line] rule requires the plaintiff to 'specifically disclose the amount of monetary damages sought' [quoting

---

[15] *See also Shaw,* 994 F.2d at 366–68 (finding it "eminently sensible" for a defendant seeking to remove a complaint without an ad damnum clause to establish the amount in controversy by an interrogatory requesting the specific amount sought by the plaintiff, but "stop[ping] short … of declaring that this is the only means by which a defendant can establish" the amount in controversy), *abrogated in part on other grounds*, *Meridian Sec. Ins. Co,* 441 F.3d at 539-40.

*Walker*, 727 F.3d at 825], in order to trigger Section 1446(b)'s deadlines[,] [t]he Seventh Circuit . . . has not addressed whether Section 1446(b) can be triggered by a simple calculation on the part of the defendant from data revealed by the plaintiff's papers in the absence of a specific damages estimate from the plaintiff"). *Walker* involved a class action where the district court found that the plaintiff had "implicitly conceded" that the original complaint did not sufficiently allege the amount which the class was seeking to recover. *Walker,* 727 F.3d at 822 n.2. The "other papers" at issue in the case also did not contain information from which a simple calculation might have revealed the amount in controversy. *See id.* at 825. While *Walker's* bright-line rule might have the effect of preventing removal on the complaint in particular categories of cases (as opposed to all complaints without ad damnum clauses),[16] it does not state a general rule that would preclude a finding in this case that removal was proper based on the allegations of the complaint.[17]

---

[16] *See, e.g., Redfield,* 2021 WL 2451906, at *3 (where the court applied *Walker* to reject the plaintiff's argument that the 30-day removal clock was triggered by a complaint that alleged "permanent and severe personal injuries, medical expenses, and lost wages," and also sought punitive damages); *Rubel v. Pfizer Inc.,* 276 F. Supp. 2d 904, 909 (N.D. Ill. 2003) (remand required where the complaint "contain[ed] only generalized allegations regarding the nature of plaintiff's injuries and d[id] not specify the damages sought").

[17] *See Goatley v. Wal-Mart*, No. 1:17-cv-01321-TWP-MJD, 2017 WL 4545949, at *3 (S.D. Ind. Oct. 12, 2017) (rejecting argument that no defendant in a state in which the trial rules prohibit ad damnum clauses can ever remove based on diversity jurisdiction without discovery, stating that "[v]ague allegations of 'severe and permanent personal injuries' and 'extreme disfigurement, pain and suffering' like those made in this case do not require [sic] removal, but specific allegations as to the nature and extent of the plaintiff's injury, or specific allegations as to the amount of medical expenses incurred or wages already lost could show that the jurisdictional amount is satisfied").

Significantly, unlike *Walker*, other circuit courts have addressed the issue of whether the bright-line rule precludes removal where a simple calculation is required based on data revealed in the complaint. For example, in *Romulus*, the First Circuit "h[e]ld that the time limits in Section 1446(b) apply when the plaintiffs' pleadings or the plaintiffs' other papers provide the defendant with a clear statement of the damages sought *or with sufficient facts from which damages can be readily calculated.*" 770 F.3d at 69 (emphasis added). The court stated that this rule was "[i]n line with other circuits that have adopted a bright-line approach." *Id.* As the Sixth Circuit has explained, "[u]nder [the] bright-line rule, a defendant is not required to search its own business records or 'perform an independent investigation into a plaintiff's indeterminate allegations to determine removability[,]'" but "a defendant *does* have a duty to 'apply a reasonable amount of intelligence to its reading of a plaintiff's complaint' or other document." *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 285 (6th Cir. 2016) (emphasis in original) (quoting *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 145 (2d Cir. 2014)). Applying the same principle, the Ninth Circuit, in *Kuxhausen v. BMW Financial Services NA LLC*, 707 F.3d 1136 (9th Cir. 2013), rejected the defendant's argument that the district court erred when it "reasoned that, given 200 class members and given [the plaintiff's] demand for 'rescission of a vehicle contract exceeding $50,000,' there were class-wide damages 'of at least $10,000,000.'" *Id.* at 1140. The defendant argued that prior case law establishing a bright-line rule "freed defendants from the need to make this sort of mathematic calculation." *Id.* But the court explained that, while "defendants need not make extrapolations or engage in guesswork; yet the statute 'requires a defendant to

26

apply a reasonable amount of intelligence in ascertaining removability,' . . . [and] [m]ultiplying figures clearly stated in a complaint is an aspect of that duty." *Id.* (quoting *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 206 (2d Cir. 2001)).

Several of the above cited cases involved the issue of whether the defendant has a duty to apply information in its own possession in determining the amount of controversy. In this situation, the bright-line test opts for a clear rule that avoids "the unenviable task of determining whether the defendant … should have investigated, or what the defendant should have discovered through that investigation" in favor of "analyzing what was apparent on (or easily ascertainable from) the face of the plaintiff's pleadings" or other papers. *Romulus*, 770 F.3d at 76. This case does not involve that battleground issue. But those cases are nevertheless relevant here because, in deciding whether a defendant has a duty to investigate, they make clear that the bright-line rule does *not* excuse a defendant from applying a common sense reading to the complaint to ascertain *based on that document* whether the case is removable.

In addressing the battleground issue of a defendant's duty to investigate in its recent decision in *Railey v. Sunset Food Mart, Inc.,* 16 F.4th 234 (7th Cir. 2021), the Seventh Circuit also provides guidance on the issue before this Court of whether a defendant is excused by the bright-line rule from applying a common sense reading to the complaint to ascertain based on that document whether the case is removable. The *Railey* court held that the 30-day removal clock will be triggered "[i]f removability turns on information about the defendant that the defendant itself knows or can readily ascertain." *Id.* at 241. The court cautioned that this holding should not be read "to impose any meaningful

burden on defendants," as the court stood "fully by [its] prior determination [in *Walker*] that district courts are not required to engage in a 'fact-intensive inquiry about what the defendant subjectively knew or should have discovered' about the plaintiff's case to assess the timeliness of a defendant's removal." *Id.* (quoting *Walker*, 727 F.3d at 825). The court reasoned, however, that although "defendants are not required to engage in guesswork about a plaintiff's legal theory or exhaustively scrutinize ambiguous pleadings to discern whether the plaintiff is trying to obscure a basis for federal jurisdiction," *id.* at 240, that does not mean a defendant can "bury its head in the sand or feign ignorance about information within its control," *id.* at 241.

Just as the 30-day clock is triggered if the removability of a case turns on information that the defendant can readily ascertain about itself, *Railey, supra*, the clock is triggered if removability of the case turns on information about the plaintiff's claims that the defendant can readily ascertain from the face of the complaint. In either situation, a defendant cannot "bury its head in the sand or feign ignorance about information" that is otherwise easily discernable. If the defendant has clear notice from the complaint itself that "the predicates for removal are present," *Walker*, 727 F.3d at 824, it must act promptly to remove the case. Here, State Farm was required to have removed the case within 30 days of having received service of the complaint because a simple calculation based on the complaint's allegations revealed that Plaintiff seeks at least the jurisdictional minimum of $75,000. It is important to stress that 28 U.S.C. § 1446(b)(3) only extends the time period for removal "if the case stated by the initial pleading is not removable. . . ." That plainly was not true of the initial complaint at issue here. State Farm's removal well

beyond 30 days from when it received service of the complaint was untimely, and the case must be remanded to state court.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion For Remand **(DE 9)** is **GRANTED**. The Clerk of Court is **DIRECTED** to **REMAND** the case to state court and close the file.

So ORDERED this 22nd day of April 2022.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT